

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

---

271 Cadman Plaza East
Brooklyn, New York 11201
December 23, 2016

<u>By ECF</u>
Honorable Allyne R. Ross
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   <u>Janfeshan  v. USCBP *et al.*, CV-16-6915</u>
<u>(Ross, J.) (Mann, C.M.J.) (E.D.N.Y.)</u>

Dear Judge Ross:

Defendants respectfully write to request that the Court issue an order stating that United States Customs and Border Protection ("CBP") may conduct a search of Plaintiff's cellphone, or in the alternative, set a briefing schedule for a motion that Plaintiff was ordered to file, but has not yet filed.

In his Complaint in this action, Plaintiff Hemad Janfeshan seeks to enjoin a border search of a cellphone that he was carrying when he arrived at John F. Kennedy International Airport ("JFKIA") on November 20, 2016. Plaintiff previously sought such relief by filing a motion for a preliminary injunction in *Janfeshan v. Kerry*, CV-16-4324 (Ross, J.) (Bloom, M.J.) (EDNY) ("*Janfeshan I*"). Plaintiff's complaint in *Janfeshan I* sought a travel document that would allow him to board a flight from Egypt to the United States. As a result of arrangements made under the supervision of Magistrate Judge Bloom, Plaintiff was allowed to board such a flight, and arrived at JFKIA on November 20, 2016, when CBP took custody of the cellphone in order to conduct a lawful border search of the cellphone. Plaintiff then moved in *Janfeshan I* for a preliminary injunction to prevent CBP from conducting the search.

At a conference in *Janfeshan I* on December 6, 2016, Your Honor suggested that CBP briefly refrain from conducting a search of the cellphone until the Court could rule on Plaintiff's objections to the search, and CBP agreed to Your Honor's suggestion. Transcript excerpts, Appendix A hereto, at 6-7. By Order in *Janfeshan I* dated December 6, 2016, Your Honor directed Plaintiff to commence a new action, and to file his preliminary injunction motion in that action. Minute Entry Order, Appendix B hereto. That order further directed Defendants to inform the Court of a timeline for responding to that motion. *Id.* At a conference held in *Janfeshan I* on December 9, 2016, Magistrate Judge Bloom ordered Plaintiff (1) to file the new action by December 14, 2016 and (2) to provide Defendants with additional information to support Plaintiff's claim that certain of the communications stored on the cellphone are subject to the attorney-client privilege. Transcript excerpts, Appendix C hereto, at 5-8, 20-21.

Plaintiff commenced the above action by filing a complaint on December 14, 2016. However, Plaintiff has not filed a motion for a preliminary injunction, or any other relief, in this action.  In addition, Plaintiff has failed to provide Defendants with any additional information concerning his claim of privilege.  In an effort to resolve these matters without burdening the Court, the undersigned sent two e-mails to Plaintiff's counsel yesterday.  In response to the first e-mail, counsel claimed, in effect, that Plaintiff had complied with Your Honor's December 6th Order merely by filing a complaint in the above action.  Counsel's e-mail did not address Magistrate Judge Bloom's Order.  Counsel did not respond to the undersigned's second e-mail.

As a result of Plaintiff's failure to comply with Orders of this Court, CBP has been unable to begin a lawful border search of the cellphone.  The brief delay contemplated by Your Honor has now lasted 17 days, and there is no indication of when that the delay will end.

Accordingly, Defendants respectfully request that the Court issue an Order providing that CBP may conduct a border search of the cellphone.  In the alternative, Defendants respectfully request that the Court order Plaintiff to file his motion, and provide the information ordered by Magistrate Judge Bloom, no later than December 28, 2016; that Defendants file their response to the motion no later than January 5, 2017; and that the Court hold a hearing at its earliest convenience on or after January 6, 2017.[1]

Respectfully submitted,

ROBERT L. CAPERS
United States Attorney

By:   /s_____

ELLIOT M. SCHACHNER
Assistant U.S. Attorney
(718) 254-6053

cc:

Naz Ahmad, Esq.
Attorney for Plaintiff
(by ECF)

---

[1] By letter dated December 19, 2016 (Dkt. 8), Defendants requested that this action be reassigned from Chief Magistrate Judge Mann to Magistrate Judge Bloom.   Plaintiff has not opposed that request.

# APPENDIX   A

1

1  UNITED STATES DISTRICT COURT
   EASTERN DISTRICT OF NEW YORK
2  ---------------------------------------x
   HEMAD JANFESHAN,
3
                        Plaintiff,
4
         versus                          16 CV 4324 (ARR)
5
   SECRETARY OF STATE JOHN KERRY, et al.,
6                                        U.S. Courthouse
                     Defendants.         Brooklyn, New York
7  ---------------------------------------x
                                         December 6, 2016
8                                        11:10 a.m.

9

10        Transcript of Civil Cause for Telephone Conference

11 Before:     HONORABLE ALLYNE R. ROSS,
                          District Court Senior Judge
12

13                         APPEARANCES

14 Attorney for Plaintiff:
   NAZ AHMAD, ESQ.
15
   Attorney for Defendant:
16 SCOTT DUNN, ESQ.
   ELLIOT SCHACHNER, ESQ.
17

18 Official Court Reporter:
   MICHELE NARDONE, CSR, RPR, CRR
19 Phone:  718-613-2601
   Fax:  718-613-2631
20 Email:  Mishrpr@aol.com

21 Proceedings recorded by mechanical stenography.  Transcript
   produced by computer-aided transcription.
22

23

24

25

MICHELE NARDONE, CSR – Official Court Reporter

5

Janfeshan v. Kerry

1    authorities the proper procedure to protect.

2         My guess is what's going to come out of this

3    ultimately will be -- you know, I don't know what's in that

4    phone, but if there are many, many communications and there are

5    specific arguments about the specific communications there will

6    be, probably, a lengthy presentation of what's privileged and

7    why and there will be disputes about that, and the question is

8    how we generate that back and forth without forever harming an

9    attorney-client privilege; and I cannot imagine there isn't a

10   way of doing that.

11        MS. AHMED:  Your Honor, this is Ms. Ahmad.  I'm sure

12   Mr. Schachner and Mr. Dunn are aware of this.  So currently CBP

13   policy contains some provisions when an individual claims that

14   their device contains attorney-client privilege information.

15   The key difference for us -- and I'm sure that your clerks

16   and/or Mr. Dunn and Mr. Schachner will have the same difficulty

17   I did -- is that most of the case law on this issue involves

18   motions to suppress.  So where charges were brought after the

19   search was done, and the parties, you know, our client is a

20   party intending litigation.

21        THE COURT:  I don't know what bearing that is

22   necessarily going to have on this.  I know you have thrown it

23   into the brief, but it's not clear to me that the fact of a

24   pending litigation -- I mean, it doesn't mean any more than

25   that we would like to have the judge know what's going on about

MICHELE NARDONE, CSR - Official Court Reporter

6

Janfeshan v. Kerry

1  this.

2         MS. AHMED:  Well, Your Honor, to the extent that any

3  of the communications concern the pending litigation, there is

4  obviously a risk no matter how, you know, good of a Chinese

5  wall, as you put it, they put up, that information will be

6  shared.

7         THE COURT:  I'm sorry.  I don't know, you know, there

8  is always that risk whether or not there is a pending

9  litigation.  So I'm not sure what that adds to it.  You may be

10 right.  I'm not answering that question at all.

11        I'm just telling what you my preliminary thoughts are.

12 It does seem to me, though, that there ought to be a way of

13 litigating this before anything that a court would determine to

14 be privileged would get past the government's Chinese wall; and

15 what I would like to do, I think, is just get enough of a

16 response from the government so that I understand what we are

17 dealing with.

18        If it's heading where I think it is, which is not

19 just, you know, the government can look at everything versus

20 the government can look at nothing because we are going to give

21 the phone back, obviously something in the middle, where there

22 has to be a judicial determination as to whether or not

23 something is privileged, and, you know, should go to another

24 agency.  Typically in these types of situations, I guess

25 analogous situations, I mean ultimately the government will be

7

Janfeshan v. Kerry

1    responsible to establish that insofar as there were privileged

2    communications they didn't get leaked.

3            I think it's ultimately going to have to be that type

4    of process, where a determination is made based on explanations

5    and reasons, none of which I have right now.  I don't know

6    anything about this guy; I don't know what's privileged; I

7    don't know why he said certain names are privileged; I don't

8    know why pictures are privileged.  Did he take pictures for his

9    lawyer and no one else?  I mean, I just don't know what the

10   arguments are.

11           I do think that it would be appropriate, since this

12   has been going on for so long and since I think we can deal

13   with it relatively quickly, just to have customs hold off

14   briefly until we can sort out how we resolve the issue.

15           MR. DUNN:  Judge?

16           THE COURT:  Yes.

17           MR. DUNN:  This is Scott Dunn.  So a couple of

18   thoughts, if I might.

19           THE COURT:  Absolutely.

20           MR. DUNN:  So that's fine.  The court's suggestion is

21   totally accepted by the government in terms of holding off.

22   The question is what time frame is the court looking at in

23   terms of --

24           THE COURT:  It depends on what you get me.  Maybe we

25   will know by tomorrow.  Maybe we will know this afternoon.

MICHELE NARDONE, CSR - Official Court Reporter

# APPENDIX   B

Case 1:16-cv-04324-ARR-LB   Document 12   Filed 12/06/16   Page 1 of 1 PageID #: 154

30 mins
D/F

## CIVIL CAUSE FOR CONFERENCE:
BEFORE _____ROSS, J._____          DATE: 12/6/2016          TIME: __11:30 a.m.__

Docket No. _____16-cv-4324_____

TITLE: *Hemad Janfeshan v. John Kerry, et al.*,16-cv-4324

PLTFFS ATTY: _____Naz Ahmad_____          _____ not present
                        X_____present

DEFTS ATTY: _____Scott Dunn_____          _____ not present
                        X_____present

COURT REPORTER: __MICHELE NARDONE__      COURTROOM DEPUTY: D. LASALLE

OTHER _____

____✓_____   CASE CALLED

_____   Conf. Adj'd to
_____

Minute Entry for proceedings held before Judge Allyne R. Ross: The court held a telephonic conference on December 6, 2016 regarding plaintiff's motion for a temporary restraining order and preliminary injunction.   As stated in the court's order dated December 6, 2016, plaintiff is directed to file his motion in a separate civil action, which may be related to the instant action. Defendants are directed to inform the court of a proposed timeline for responding to plaintiff's motion.   The proposed schedule, as well as any opposition papers, should likewise be filed in the new civil action.   Defendants agreed not to commence a search of plaintiff's cellular phone until the court resolves plaintiff's motion.   At the suggestion of the parties, the motion in the new action will be referred to Magistrate Judge Lois Bloom.   The preceding is set forth on the record.

# APPENDIX   C

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK


HEMAD JANFESHAN,               *     Case No. 16-CV-4324(AAR)
                              *
             Plaintiff,   *     Brooklyn, New York
                              *     December 9, 2016
    v.                   *
                              *
SECRETARY OF STATE JOHN    *
 KERRY, et al.,          *
                              *
            Defendants.  *
                              *

* * * * * * * * * * * * * * * *

TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
BEFORE THE HONORABLE LOIS BLOOM
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:          NAZ AHMAD, ESQ.
                              TARIK ISMAIL, ESQ.
                              Main Street Legal Services,
                               Inc.
                              CUNY School of Law
                              2 Court Square
                              Long Island City, NY  11101


For the Defendants:         SCOTT DUNN, ESQ.
                              United States Attorneys Office
                              Civil Division
                              Eastern District of New York
                              271 Cadman Plaza East
                              Brooklyn, NY  11201


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

Fiore Reporting and Transcription Service, Inc.
4 Research Drive, Suite 402
Shelton, Connecticut 06484 (203)929-9992

4

1          MR. ISMAIL:  Your Honor, if I can just weigh in on

2     this question, and I fully appreciate the Court's directive,

3     and, of course, Judge Ross's directive for us to file the

4     separate complaint.  And our intention is to comply with that

5     order --

6          THE COURT:  So --

7          MR. ISMAIL:  -- as quickly as possible.

8          THE COURT:  -- I'm giving you a deadline, because

9     we're not going to keep having --

10          MR. ISMAIL:  We're happy to have a deadline, Judge.

11          THE COURT:  -- hearings on a case that doesn't

12     exist.

13          MS. AHMAD:  Yes.  Your Honor, we weren't -- we were

14     not imagining that the phone issue would -- I -- the first

15     thing is --

16          THE COURT:  How could you not imagine that the phone

17     issue would be a whole new can of worms here?  They were just

18     going --

19          MS. AHMAD:  But --

20          THE COURT:  -- to agree with your point of view?

21          MS. AHMAD:  Your Honor, we thought that this was the

22     natural venue to do it, because CVP confiscated his phone.

23          THE COURT:  Venue is not the issue.

24          MS. AHMAD:  Your -- to the extent that CVP

25     confiscated his phone upon his return --

5

1          THE COURT:  Stop.  If I might --

2          MR. ISMAIL:  Judge, we have no problem with the

3    Court --

4          MS. AHMAD:  Yeah.

5          MR. ISMAIL:  -- setting a deadline for us to file

6    this complaint and we will file a new complaint on the phone

7    issue, which -- which we acknowledge.

8          While -- while especially relevant to a case in

9    which the adverse party is searching our client's phone, is a

10   separate issue --

11         MS. AHMAD:  And --

12         MR. ISMAIL:  -- and we'll file a --

13         MS. AHMAD:  -- and we're not disputing that at all,

14   Your Honor.  I -- we have --

15         THE COURT:  Let me just tell you, Ms. Ahmad.

16         MS. AHMAD:  Yes.

17         THE COURT:  And you can be seated.  I don't want to

18   be making this at all sound different than I intend it sound.

19         I complimented the attorneys in this case because I

20   thought for a problem for a person who was really in a

21   difficult situation that the attorneys in this room did an

22   incredible job in bringing this matter to a resolution.

23   So you must imagine how disappointed I am.

24         I understand that you said you couldn't commit to a

25   voluntary discontinuance.  Your client wasn't here yet.  You

6

1    didn't know.  But we have every transcript.

2         I think I made myself clear that I expected if the

3    government went the extra mile, which they absolutely did, we

4    didn't know what would happen when Mr. Janfeshan landed in the

5    United States.

6         We had no idea whether he would be held or he would

7    be allowed into the country, but we agreed that if he was

8    brought back, that this case would be over.

9         And now, not only is it not over, you're bringing

10   TROs about separate matters.  You are -- I haven't seen it,

11   but from Mr. Dunn's letter, you've given him a settlement

12   agreement, which would make you a prevailing party, and agree

13   to things beyond anything that the government ever said it

14   would agree to, and you're making an application for

15   attorney's fees to the Court.  None of that -- moreover, none

16   of that was raised to the Court.

17        So when -- when people say that the government is

18   doing things not transparently, not moving in good faith, in

19   this particular instance, if the plaintiff's intended to try

20   to get them to redo their manual, or if they intended to move

21   for attorney's fees, you don't think that would have been

22   something you should have told me and Mr. Dunn before he went

23   through the efforts he did to get his client on that plane?

24             MS. AHMAD:  Well --

25             THE COURT:  Your client.  I'm sorry.

7

1        MS. AHMAD:  Yes.

2        THE COURT:  Not his.

3        MS. AHMAD:  So, first, Your Honor, if you want to

4    set a deadline for us to file a new action, please go ahead.

5        THE COURT:  Very good.  Let's do that first.

6       (Pause.)

7        THE COURT:  How does Wednesday of next week look?

8        MS. AHMAD:  Your Honor, could we have until the

9    following Monday?  I was --

10       THE COURT:  No.  You're talking about the --

11       MS. AHMAD:  Yeah.  It's -- Your Honor, the only

12   reason I'm asking for more time is because Mr. Kassem is out

13   of the country and --

14       THE COURT:  Again, you have another attorney with

15   you.  You're filing papers.  You've had a federal --

16       MS. AHMAD:  Okay.

17       THE COURT:  -- district --

18       MS. AHMAD:  Yeah.

19       THE COURT:  -- judge hear --

20       MS. AHMAD:  All right.

21       THE COURT:  -- TRO and say in an order that you need

22   to file a new separate action.

23       MS. AHMAD:  Yes.  Okay, Your Honor.

24       THE COURT:  That was on the 6th.  We are now at the

25   9th --

Fiore Reporting and Transcription Service, Inc.   203-929-9992

8

1          MS. AHMAD:  Wednesday is fine.  Wednesday is fine.

2          THE COURT:  Wednesday, the 14th.  Now, again, Ms.

3    Ahmad, I understand why your client has not voluntarily

4    discontinued this case, because you want to be able to raise

5    that there's a pending litigation for the purposes of saying

6    the attorney-client privilege on the phone.

7          MS. AHMAD:  No.  Your Honor, the reason we -- we did

8    not file the TRO in order to prolong this case.  We file the

9    TRO because we have informed Mr. Dunn and CVP counsel that we

10   objected to their search of the phone, and they informed us

11   that they were going to proceed anyways, even --

12         THE COURT:  And I saw all of that in the papers.

13         MS. AHMAD:  Okay.  So --

14         THE COURT:  So I'm here to try to find solutions to

15   that case, because if we can find solutions to that case, then

16   maybe we don't have to have this separate action.

17         But I wanted to also give you the clear indication

18   that, again, this has been referred to my attention by Judge

19   Ross.  Judge Ross gave you an order.

20         MS. AHMAD:  Yes.

21         THE COURT:  I was clear that you were supposed to

22   file your stipulation discontinuing the case.

23         MS. AHMAD:  Yes.

24         THE COURT:  That hasn't been done.

25         MS. AHMAD:  Well, so, Your Honor, I think there was

19

1          MS. AHMAD:  All right.  Yes, Your Honor.

2          THE COURT:  I've asked you to consider it.  I

3     haven't asked you to say yes to it today.

4          So, Mr. Dunn, is there anything that you want to put

5     on the record at this point?

6          MR. DUNN:  No.

7          THE COURT:  And are you present in the next several

8     weeks, because I imagine there is going to be a new complaint?

9          MR. DUNN:  Yes.

10         THE COURT:  Okay.  And so I've given you until the

11    14th to file the new action, and then any of the requests will

12    be filed under that new action.

13         And you've heard -- let me just have it on the

14    record, Mr. Dunn, on behalf of the agency, you can affirm that

15    they will not do any searches until this matter is resolved,

16    even if it's in the new matter before the Court has ruled.

17         MR. DUNN:  Yes.

18         MR. ISMAIL:  And, Your Honor, we'll take as a

19    bookend, then, on the -- on the dismissal question, the 21st

20    deadline that the Court had originally set.  If that's -- if

21    that's okay.

22         THE COURT:  Yes.  I would -- I would love for them

23    to be at the same time.

24         MR. ISMAIL:  We'll do everything we can.

25         THE COURT:  I would.

20

1          MR. ISMAIL:  Yeah.

2          THE COURT:  Because that way it's clean and we know

3     what we're doing going forward.

4          Again, I want people to be thinking about ways to

5     solve the next issue.

6          MS. AHMAD:  Yeah.

7          THE COURT:  I don't know what you're thinking is the

8     next issue, Ms. Ahmad, but I'm thinking the phone is the

9     issue.

10          I've done some reading about suggestions.  Again, my

11    aim here is to get you both to think about an acceptable

12    protocol for determining whether there is attorney/client

13    privilege matters on the phone.

14          And let me just say, in my mind, plaintiff is the

15    one who would have to supply more information.  I don't know

16    whether that would be one bit or 40 bits of information, but

17    you listed a list of people.  I know some of those people.  I

18    don't know all of those people.

19          And there should be a corresponding date and time

20    that those people would know that they spoke to him or that

21    they sent something that they would assert as privileged.

22          So there should be ways that we could --

23          MS. AHMAD:  Yeah.  Yeah.  We're not -- we're not

24    disputing that, Your Honor.  We're happy to figure that out in

25    a way you suggest.  That's --

1          THE COURT:  Well, I'm telling you to think about

2      that now, because, again, I don't want the next case, which I

3      really don't know what the basis is for the next case.

4          Usually these disputes arise within the context of a

5      criminal case and I understand they don't have a search

6      warrant.  It was a search at the border.  I understand we're

7      in a different sort of context.

8              But if what you want to do is protect information

9      that's on his phone, it's not going to be that the Court is

10     going to never let the government look at the phone  --

11             MS. AHMAD:  Yes, Your Honor.  We did not imagine

12     that --

13             THE COURT:  So let's --

14             MS. AHMAD:  -- at all.

15             THE COURT:  -- try to figure out --

16             MS. AHMAD:  Yes.  Your -- that is --

17             THE COURT:  -- a protocol --

18             MS. AHMAD:  -- that is what we envisioned, Your

19     Honor.

20             I will just add that we don't want steps -- we don't

21     want what we -- what we accomplished during the case to be

22     considered a waiver of claims with respect to his

23     naturalization.  That's all.

24             THE COURT:  Again, the case that you brought was

25     about him returning to the United States.