UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
                                                                     :
HEMAD JANFESHAN,                                                     :    16-CV-6915 (ARR)(LB)
                                                                     :
                    Plaintiff,                                       :    <u>NOT FOR ELECTRONIC</u>
                                                                     :    <u>OR PRINT PUBLICATION</u>
        -against-                                                    :
                                                                     :    <u>OPINION & ORDER</u>
U.S. CUSTOMS AND BORDER PROTECTION, et al.,                          :
                                                                     :
                    Defendants.                                      :
-------------------------------------------------------------------- :
                                                                     X

ROSS, United States District Judge:

On December 15, 2017, plaintiff Hamed Janfeshan requested review of Magistrate Judge Lois Bloom's order dated December 1, 2017. *See* Pl.'s Objs. to Non-Dispositive Order of Magistrate Judge Bloom ("Pl.'s Objs."), ECF No. 54. In that order, Judge Bloom entered a protective order, *see* ECF No. 47-1 ("Protective Order"),[1] which includes a provision to which plaintiff objects. *See* Order Entering Protective Order ("Order"), ECF No. 52. In short, the provision allows defendants to disclose information that plaintiff has designated as confidential to other governmental entities as defendants "would otherwise be authorized to do by law" unless plaintiff specifically requests that the information not be disseminated. *See* Protective Order ¶ 14 ("Paragraph 14"). If plaintiff so requests, defendants can either accede to the request or reject it, at which point plaintiff can apply to the Court for an order prohibiting defendants from disclosing the information. *Id.* While the Court considers plaintiff's application, defendants cannot share the information outside of the litigation. *Id.* Plaintiff argues that Judge Bloom's decision to enter the Protective Order was clearly erroneous because the Protective Order does not "sufficiently protect" plaintiff, Pl.'s Objs. at 1, and that it was

---

[1] In her December 1 order, ECF No. 52, Judge Bloom entered the defendants' proposed protective order, ECF No. 47-1. The official Protective Order can now be found at ECF No. 53.

1

contrary to law because the Protective Order requires plaintiff to meet an "undefined heightened standard" to protect his information from disclosure "across the government," *id.* at 3. Because I find Judge Bloom's order neither clearly erroneous nor contrary to law, I affirm it.

### FACTUAL AND PROCEDURAL BACKGROUND

This case concerns an allegedly illegal search and seizure of plaintiff's cell phone that took place following plaintiff's arrival at John F. Kennedy International Airport on November 20, 2016. *See* Second Am. Compl. ("SAC") ¶¶ 16, 119, 120, 124, 128, ECF No. 29. Plaintiff, who is Muslim, was born in Afghanistan and is a lawful permanent resident of the United States. *Id.* ¶ 6. He alleges that, because of his race or national origin, agents of the United States Customs and Border Protection ("CBP") stopped him at the border, subjected him to extensive questioning, and seized his cell phone without reasonable suspicion. *See id.* ¶¶ 4, 5, 23, 58, 105, 122, 124. The agents subsequently performed a forensic search of his cell phone, the results of which plaintiff claims were digitally copied and possibly disseminated to other agencies. *Id.* ¶ 104.

In his operative complaint, plaintiff alleged violations of the Fourth and Fifth Amendments to the United States Constitution, as well as the Administrative Procedure Act and the New York Civil Practice Law and Rules. *See id.* ¶¶ 118–128. On June 7, 2017, defendants moved to dismiss plaintiff's amended complaint in its entirety. *See* Defs.' Mem. of Law in Supp. of Mot. to Dismiss, ECF No. 31-9, 31-10. On August 21, 2017, I granted in part and denied in part defendants' motion, allowing plaintiff's Fourth and Fifth Amendment claims to move forward to discovery. *See Janfeshan v. U.S. Customs & Border Prot.*, No. 16-CV-6915 (ARR) (LB), 2017 WL 3972461, at *9–12 (E.D.N.Y. Aug. 21, 2017). Specifically, I found that plaintiff's allegations "raise[d] a reasonable inference that CBP's actions towards Janfeshan were motivated at least in part by his religion and national origin" in violation of the Fifth Amendment. *Id.* at *10. Because I found that plaintiff's Fourth Amendment claim regarding the agents' lack of reasonable suspicion was "integrally related" to his Fifth

2

Amendment claim and would be "more amenable to a reasoned disposition after factual development," I declined to dismiss it at that stage. *Id.* at *12. The case proceeded to discovery.

On September 19, 2017, Judge Bloom ordered the parties to file a mutual protective order. *See* Scheduling Order. However, they were unable to reach an agreement concerning "a provision that states that the United States and its agencies shall not be prohibited or limited from using or disclosing materials and information obtained in discovery as the United States, its agencies, and its employees would otherwise be authorized to do absent entry of the protective order." Joint Letter on Protective Order Dispute, ECF No. 42. The parties subsequently engaged in many exchanges concerning their respective positions, briefed the topic of inter- and intra-governmental sharing of information, and attended several conferences to settle the matter. *See* ECF Nos. 43–51.

On December 1, 2017, Judge Bloom entered the Protective Order, which included Paragraph 14:

> Nothing in this Protective Order shall prohibit or limit the United States or any of its agencies or employees from using or disclosing materials or information designated as "Confidential Information" or "Attorneys' Eyes Only" as the United States, its agencies, and its employees, would otherwise be authorized to do by law absent entry of the Protective Order. Notwithstanding the foregoing sentence, Plaintiff may request, in writing to counsel for Defendants, that specific "Confidential Information" or "Attorneys' Eyes Only" information designated and being disclosed by Plaintiff not be disclosed to persons other than those described in paragraph 7[2] of this Protective Order . . . In the event that Defendants reject Plaintiff's request, Defendants shall so advise Plaintiff's counsel in writing, and Plaintiff may apply within three (3) business days of the rejection to the Court for an order prohibiting Defendants, notwithstanding the first sentence of this paragraph, from disclosing the specified "Confidential Information" [or] "Attorneys' Eyes Only" information to persons other than those described in paragraph 7 of this Protective Order. From the time Defendants receive a timely written or oral request . . . , they shall not disclose the specified "Confidential Information" or "Attorneys' Eyes Only" information to persons other than those described in paragraph 7 of this Protective Order unless and until the Court rules that they are permitted to do so if Plaintiff has makes [sic] a timely application to the Court after Defendants deny his request.

---

[2] Paragraph 7 refers to people involved in this litigation, such as the parties, their counsel, their employees, witnesses, and others who provide the parties and their counsel with support. Protective Order ¶ 7.

3

In her order, Judge Bloom "acknowledge[d] plaintiff's concerns regarding the use of sensitive information" but found that Paragraph 14 provided Janfeshan with "sufficient protections." Order at 2. On December 15, 2017, plaintiff timely filed his objections to Judge Bloom's order. *See* Pl.'s Objs. On December 22, 2017, defendants responded. *See* Defs.' Resp. in Opp'n to Pl.'s Objs. ("Defs.' Opp'n"), ECF No. 56.

## STANDARDS OF REVIEW

### I. Review of a Magistrate's Order

A district court shall reverse a magistrate judge's order on a non-dispositive motion only where the order is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); *see also* Fed. R. Civ. P. 72(a). Courts generally consider discovery disputes to be non-dispositive. *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990). A factual finding is clearly erroneous if "on the entire evidence," the reviewing court "is left with the definite and firm conviction that a mistake has been committed." *Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). "An order is contrary to law 'when it fails to apply or misapplies relevant statutes, case law or rules of procedure.'" *DeFazio v. Wallis*, 459 F. Supp. 2d 159, 163 (E.D.N.Y. 2006) (quoting *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 206 F.R.D. 78, 86 (S.D.N.Y. 2002)). This "'heavy' burden of proof lies with the moving party, and the highly deferential standard 'only permits reversal where the magistrate judge abused h[er] discretion.'" *Grief v. Nassau Cty.*, 246 F. Supp. 3d 560, 564 (E.D.N.Y. 2017) (alteration in original) (quoting *Ahmed v. T.J. Maxx Corp.*, 103 F. Supp. 3d 343, 350 (E.D.N.Y. 2015)). Therefore, "the magistrate judge's findings should not be rejected merely because the court would have decided the matter differently." *Id.* (citation omitted).

### II. Protective Orders

Under Federal Rule of Civil Procedure 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).

4

However, "a court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The burden of persuasion falls on the party seeking the protective order. *Duling v. Gristede's Operating Corp.*, 266 F.R.D. 66, 71 (S.D.N.Y. 2010). Good cause exists "when a party shows that disclosure will result in a clearly defined, specific and serious injury." *In re Sept. 11 Litig.*, 262 F.R.D. 274, 277 (S.D.N.Y. 2009) (quoting *In re Terrorist Attacks on Sept. 11, 2001*, 454 F.Supp.2d 220, 222 (S.D.N.Y. 2006)). General allegations of harm do not suffice: "Under Rule 26(c), the moving party must establish 'particular and specific facts' rather than 'conclusory assertions' that justify the imposition of a protective order." *Coggins v. Cty. of Nassau*, No. 07-CV-3624 (JFB) (AKT), 2014 WL 495646, at *2 (E.D.N.Y. Feb. 6, 2014) (quoting *Rofail v. United States,* 227 F.R.D. 53, 54–55 (E.D.N.Y. 2005)). Although the burden is on the movant to establish good cause, courts must balance the interests of both parties in devising an order. *Mitchell v. Fishbein*, 227 F.R.D. 239, 245 (S.D.N.Y. 2005). Ultimately, trial courts "have substantial latitude" in determining whether to enter a protective order. *Coggins*, 2014 WL 495646, at *2 (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 26 (1984)); *see also Penthouse Int'l, Ltd. v. Playboy Enters., Inc.,* 663 F.2d 371, 391 (2d Cir. 1981) (finding that a district court has "broad discretion to determine whether an order should be entered protecting a party from disclosure of information claimed to be privileged or confidential").

## DISCUSSION

### I. Judge Bloom's Order Is Not Clearly Erroneous.

Plaintiff argues that Judge Bloom's entry of the Protective Order containing Paragraph 14 was clearly erroneous because the Protective Order does not sufficiently protect his interests. *See* Pl.'s Objs. at 1–2. Plaintiff also contends that defendants are not required to share information from discovery with other federal agencies or within defendants' component entities. *Id.* at 3. Therefore, according to plaintiff, to the extent that Judge Bloom relied on defendants' alleged need to share

5

plaintiff's confidential information, she clearly erred. *Id.* Finally, plaintiff argues that by allowing "indiscriminate information sharing," Judge Bloom's entry of the Protective Order threatens his ability to vindicate his constitutional rights in the underlying case and will chill others from bringing similar lawsuits. *Id.* at 9, 17. Defendants argue that the Protective Order "struck an appropriate balance" between the parties' interests by providing a procedural mechanism to address plaintiff's requests that the defendants not share information with other government entities. Defs.' Opp'n at 1. Defendants also point to several laws that, they argue, either require or authorize them to share information between agencies. *Id.* at 13.

Although plaintiff raises important issues concerning privacy, discrimination, and a litigant's ability to vindicate his constitutional rights, he has failed to show that Judge Bloom's entry of the Protective Order was clearly erroneous. Plaintiff's concerns, while by no means trivial, are purely speculative at this point. To the extent that these fears prove to be well-founded, the procedure that Judge Bloom implemented ensures that defendants cannot share plaintiff's confidential information before plaintiff has an opportunity to object and be heard on the matter.

### A. Judge Bloom Did Not Clearly Err in Finding that the Protective Order Sufficiently Protects Plaintiff.

Plaintiff's "primary concern" about defendants sharing his information with other government entities is that it will be misused "to negatively impact his pending naturalization application." Pl.'s Objs. at 10. He fears misuse in light "of the history of governmental misuse of information about people with his ethnic and religious background." *Id.* at 2. Specifically, plaintiff fears that the sharing of his confidential information, "even though innocuous," *id.* at 12, could result in his naturalization application being placed in the Controlled Access Review and Resolution Program ("CARRP"). *Id.* at 10–11. Operated by the United States Citizenship and Immigration Services ("USCIS"), which is not a party to this litigation but is an arm of DHS, CARRP "adjudicate[s] certain immigration applications that allegedly raise 'national security concerns.'" *Id.* at

6

10 (citing *Wagafe v. Trump*, No. 17-CV-0094-RAJ, 2017 WL 2671254, at *1 (W.D. Wash. June 21, 2017)). According to plaintiff, CARRP relies on discriminatory factors, such as religion or national origin, to determine whether someone constitutes a threat to national security. *See id.* (citations omitted). If his application were to be placed in CARRP, plaintiff alleges that, even if he met all of the statutory requirements for citizenship, his application would face "interminable delays and/or pretextual denials." *Id.* at 11. Plaintiff also fears that the "potential misuse" of his confidential information could form the basis of his nomination to or continued placement on a government watch list, such as the Terrorist Screening Database or the "Known or Appropriately Suspected Terrorist" file. *Id.* at 12.

Plaintiff's argument about the "potential" misuse of his confidential information is not sufficient to establish clear error. As a preliminary matter, it is "well-established that the Federal Rules of Civil Procedure[] create no automatic prohibition against using discovery obtained in one litigation" for outside purposes. *Duling*, 266 F.R.D. at 75–76 (citing *Dove v. Atl. Capital Corp.*, 963 F.2d 15, 19–20 (2d Cir. 1992)). Nevertheless, Judge Bloom exercised her discretion to enter a protective order, providing plaintiff with a layer of protection to which he was not entitled by law.

More importantly, plaintiff's arguments about the possible impact that the sharing of his information may have on his naturalization application are wholly conjectural. Leaving aside the possibility that plaintiff's information may not merit protection—that is, that it may not in fact be "innocuous" as plaintiff claims—plaintiff's allegations about CARRP and government watch lists are not well supported. For example, as a basis for his conclusions about CARRP, plaintiff cites *Wagafe v. Trump*, an opinion from the Western District of Washington. *See* Pl.'s Objs. at 10–12. But that opinion was not a judicial adjudication of the merits of the program. *See Wagafe*, 2017 WL 2671254, at *1. Rather, because it was dealing with a motion to dismiss, the court assumed that the plaintiff's recitation of the facts was true—as it was required to do—without deciding that they were. *Id.* While

7

the allegations about CARRP articulated in that case and that plaintiff adopts are unquestionably troubling, I will not accept as true that which another court was obligated to accept as true because of the procedural posture of that case. Moreover, plaintiff is alleging a civil rights violation—he is not challenging the legality of either CARRP or the aforementioned government watch lists.

Even if plaintiff's concerns about these programs are well-founded, plaintiff has not shown that he is likely to be subject to them. Plaintiff argues that under the Protective Order, "there is a real risk" that he "would be unable" to stop defendants from sharing information with USCIS "that could land" plaintiff's naturalization application in CARRP, which could result in "interminable delays and/or pretextual denials." Pl.'s Objs. at 10–11. In other words, plaintiff is arguing that *if* defendants refuse his request to not disseminate his information outside of this litigation and *if* Judge Bloom also denies his request, defendants *might* share his information with USCIS, which then *might* transfer plaintiff's naturalization application into CARRP, which *may* result in delays in the processing of his application. Plaintiff employs similarly attenuated logic with respect to the possibility that the sharing of his confidential information could land him on a watch list—even though, as plaintiff concedes, he may already be on a watch list. *See* Pl.'s Objs. at 12.

The injuries plaintiff fears are simply too speculative to warrant reversal of Judge Bloom's order. Even if plaintiff could show that defendants' sharing his information beyond this litigation would be harmful, he cannot show that Judge Bloom will authorize defendants to share anything: the procedure in Paragraph 14 requires Judge Bloom to assess the government's asserted need to disclose a specific piece of information in light of the reasons plaintiff asserts for resisting the disclosure of that specific piece of information. Because no discovery has been exchanged and Judge Bloom has made no rulings, plaintiff—and I—can only guess what decision she will make about a specific piece of information. *Cf. Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 413 (2013) (explaining that courts are reluctant to guess "how independent decisionmakers will exercise their judgment").

8

Given the prospective nature of plaintiff's claims, I cannot conclude that Judge Bloom clearly erred in finding that the Protective Order sufficiently protects plaintiff's interests—there is no evidence to suggest that it does not. *See HSqd, LLC v. Morinville*, No. 3:11CV1225 (WWE), 2013 WL 1149944, at *3 (D. Conn. Mar. 19, 2013) (declining to enter a protective order where "defendant's alleged example of injury is rife with speculative language (i.e., 'may', 'potential', 'could'), which is far from the 'particular and specific demonstration of fact required by Rule 26(c)" (citation omitted)).

The speculative nature of the injury plaintiff alleges distinguishes this case from many that he cites. For example, in *United States v. $557,933.89, More or Less in U.S. Funds*, the court granted the defendant's motion for a stay of discovery in a civil forfeiture case because, absent the stay, the defendant would "be confronted with the Hobson's choice of answering the complaint and the Government interrogatories, thereby waiving [his] Fifth Amendment right not to incriminate [himself] . . . or refusing under the Fifth Amendment to answer the complaint and interrogatories, in which case [his] property [would] be forfeited." No. 95-CV-3978 (JG), 1998 WL 817651, at *3 (E.D.N.Y. Mar. 2, 1998) (alterations in original) (quoting *United States v. Certain Real Property and Premises Known as 1344 Ridge Road, Laurel Hollow, Syosset, New York,* 751 F. Supp. 1060, 1061 (E.D.N.Y. 1989)). In that case and other civil forfeiture cases that plaintiff cites, the civil and criminal actions involved the same subject matter: the information the government requested necessarily implicated the defendant's parallel criminal case or a likely criminal investigation. *See id.* at *4; *Certain Real Property*, 751 F. Supp. at 1063 ("[T]he information sought to be extracted presents 'a realistic threat of incrimination' . . . as distinguished from a 'mere imaginary possibility.'") (alteration in the original) (quoting *United States v. U.S. Currency*, 626 F.2d 11, 14 (6th Cir. 1980)); *Brock v. Tolkow*, 109 F.R.D. 116, 119 (E.D.N.Y. 1985) ("A stay of civil proceedings is most likely to be granted where the civil and criminal actions involve the same subject matter . . . and is even more appropriate when both actions are brought by the government."). Here, by contrast, I am confronted with only

hypotheticals, i.e. some unidentified piece of information may negatively impact plaintiff in some way that relates to his immigration status. Additionally, as the courts in those cases acknowledged, their decisions to grant stays were discretionary—a contrary result would not have been clearly erroneous. *See US v. $557,933.89*, 1998 WL 817651, at *4; *Brock*, 109 F.R.D. at 120–121.

Plaintiff argues that his concerns about his application being placed in CARRP are "well-founded," not hypothetical, because the defendants have already sought information that seems related to immigration concerns, rather than to their defense in this litigation. Pl.'s Objs. at 11. As plaintiff recognizes, to the extent defendants ask "irrelevant" questions, plaintiff may object on relevance grounds. *See id.* at 11–12 n.3. This case is about what defendants did and what defendants knew when they stopped plaintiff at the border and seized his phone. I trust that Judge Bloom's rulings on any relevance objections will reflect that. *Cf. In re Six Grand Jury Witnesses*, 979 F.2d 939, 943 (2d Cir. 1992) ("[A]ccording the discovery rules liberal treatment does not license opposing counsel to discover anything and everything."); *Barrera v. Boughton*, No. 3:07CV1436 (RNC), 2010 WL 1240904, at *4 (D. Conn. Mar. 19, 2010) ("[P]laintiffs' immigration status and alienage [was] not probative of facts the defendants knew at the time of detention or arrest and, therefore . . . [was] not relevant to whether the defendants had reasonable suspicion or probable cause").

Most importantly, to the extent plaintiff's fears about how his information may be misused are justified, Judge Bloom has adopted a procedure that allows plaintiff to object to the dissemination of his information before it can be shared beyond the present litigation. *See* Paragraph 14. Once plaintiff objects, which he may do simultaneously with his disclosure of the information, defendants' ability to share the confidential information beyond the scope of the litigation ceases. *Id.* If defendants accede to plaintiff's request not to further disclose the information in question, that is the end of the matter. *Id.* If they do not, plaintiff can bring the issue to Judge Bloom's attention. *Id.* At that point, the parties would be on equal footing to argue their positions and Judge Bloom can

rule on specific disputes about the dissemination of specific pieces of information in the specific context of this case. *Cf. Sherwin-Williams Co. v. Spitzer*, No. 1-04CV185 (DNH/RFT), 2005 WL 2128938, at *11 (N.D.N.Y. Aug. 24, 2005) ("[T[he trial judge is armed with discretion 'to determine whether to limit the boundaries of discovery in light of the relevant facts and circumstances of a particular case.'") (quoting *Gelb v. Am. Tel. & Tel. Co.*, 813 F. Supp. 1022, 1034 (S.D.N.Y. 1993)). By mandating this procedure, Judge Bloom has ensured that plaintiff has the opportunity to object and be heard before his confidential information can be disseminated.[3]

The procedure Judge Bloom set in place is much like that which the Special Master in *U.S. v. Education Management LLC* suggested and the district court adopted. No. 2:07-CV-00461, 2013 WL 1568060, at *9 (W.D. Pa. Mar. 14, 2013), *report and recommendation adopted,* No. 2:07-CV-461, 2013 WL 1601346 (W.D. Pa. Apr. 12, 2013). There, the United States asked the court to include a provision in the protective order that would allow it to disclose confidential information to other federal agencies if the information related "to any potential violation of statute or regulation that falls within the agency's jurisdiction." *Id.* at *8. According to the United States, this was necessary so "the Executive [could] be sure that it [was] enforcing the laws uniformly." *Id.* The Special Master refused to recommend such broad disclosure rights because, under this proposal, the government alone would make the necessary determinations and the defendant would have no opportunity to object. *Id.* at *9. As the Special Master explained, the United States' proposal would not allow the defendants "to object to the disclosure; to seek judicial review of that disclosure; or to obtain a determination of

---

[3] In addition, plaintiff's contention that "[b]y default, under the Protective order, all of Mr. Janfeshan's confidential information . . . would . . . be disseminated throughout the federal government for use outside of this litigation" is false—or, at the very least, misleading. Pl.'s Objs., at 1. As defendants explain in their brief, government agencies do not have an "unfettered ability" to disclose an individual's sensitive information to other agencies, whether that person is a litigant or not. Defs.' Opp'n at 19 (citing numerous statutes including the Privacy Act, 5 U.S.C. § 552a and restrictions on sharing tax returns, 26 U.S.C. §§ 6013 and 6105). Just as defendants want the ability to use the information gleaned in discovery for purposes authorized by law, they are constrained by law in what they can do with that information.

11

whether the material relates to such a 'potential violation of statute or regulation,' or whether the alleged violation 'falls within the agency's jurisdiction.'" *Id.* Although the Special Master expressed reservations about the government's ability to share confidential information without identifying a specific need, his fears were assuaged by placing "a check on [the government's] determination." *Id.* Such a check exists here, too.

Plaintiff argues that, even with the ability to object, he faces the greater burden of being the one to lodge the objection. *See* Pl.'s Objs. at 2, 13, 14. According to plaintiff, defendants should have to petition the court to share plaintiff's confidential information, not the other way around. *Id.* at 13. I do not find this argument persuasive. Although being the first to object carries with it some extra burden, I am not left with "the definite and firm conviction" that the procedure Judge Bloom adopted will be so unduly burdensome for the plaintiff so as to constitute a "mistake." *Easley*, 532 U.S. at 242. Under the Protective Order, both parties will have to present their respective positions to the court for resolution regardless of which party makes the initial objection. If plaintiff designates "innocuous" information as "confidential" and then objects to its dissemination, I agree with defendants that plaintiff's heavy burden will be his own doing. Defs.' Opp'n at 13.

Furthermore, in the context of discovery, the party that wishes to keep information confidential must move to do so. *See Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 284 F.R.D. 132, 135 (S.D.N.Y. 2012) ("Once relevance has been shown it is up to the responding party to justify curtailing discovery." (quoting *Trilegiant Corp. v. Sitel Corp.*, 275 F.R.D. 428, 431 (S.D.N.Y. 2011)). While it is true, as plaintiff argues, that he has already designated as confidential the information in question, *see* Pl.'s Objs. at 1–2, it is also true, as defendants argue, that plaintiff can unilaterally designate anything as confidential, *see* Defs. Opp'n at 20. Therefore, even if plaintiff labels something as "confidential," he does not have to make a showing of good cause to the court unless defendants object to the designation in the first instance. Protective Order ¶ 5. Here, where

the parties have allowed each other to unilaterally designate information as confidential, it does not seem that either side contests the other's ability to shield information from the public. Their debate seems to concern only whether defendants can share plaintiff's information within the government. If that is so, plaintiff's sole burden, if any, would be to justify maintaining the confidentiality of his information in the context of intra- and inter-governmental sharing—nothing more.

Plaintiff is correct that Judge Bloom could have entered a protective order that shifted the burden to the government. Indeed, other courts have done so. *See, e.g.*, *Raytheon Aircraft Co. v. United States*, No. 05-2328-JWL, 2007 WL 4300221, at *9 (D. Kan. Dec. 8, 2007); *United States v. Univ. Hosp., Inc.*, No. 1:05-CV-445, 2006 WL 2612631, at *4 (S.D. Ohio July 28, 2006). But that decision was within Judge Bloom's "broad discretion" to make. *See In re Zyprexa Injunction*, 474 F. Supp. 2d 385, 413 (E.D.N.Y. 2007) ("Courts are endowed with broad discretion to tailor protective orders to the circumstances of a particular litigation.") (citing *Seattle Times*, 467 U.S. at 36). It also would be within Judge Bloom's "broad discretion" to modify the Protective Order if she determines that the burden is inefficiently or unfairly allocated. *See id*; *see also U.S. v. Education Management*, 2013 WL 1568060, at *4 (recommending that the Special Master be allowed to "reevaluate the procedure" set in place if it becomes clear that the procedure unduly burdened the defendants). But, given the absence of concrete information available to Judge Bloom when she entered the Order of December 1, her finding that the Protective Order sufficiently protects plaintiff's interests was not clearly erroneous.

### B. To the Extent that Judge Bloom Relied on Defendants' Justifications for Including Paragraph 14 in the Protective Order, She Did Not Clearly Err.

Defendants justify their need for Paragraph 14 on the grounds that there are laws and policies that either require or authorize defendants to share certain information obtained in discovery with other federal agencies or within DHS. *See* Defs.' Opp'n at 13–16. They argue that without Paragraph 14, the Protective Order would block them from doing what they must or can do. *Id.* Plaintiff argues that, to the extent Judge Bloom relied on defendants' representations in

13

deciding to enter the Protective Order, she clearly erred. Pl.'s Objs. at 3. Specifically, plaintiff claims that the government is not required to share information internally or that, if it is, Judge Bloom committed clear error by deferring "to the mere possibility that information may need to be shared." *Id.* at 14. Plaintiff also contends that his privacy interests outweigh whatever authorization the government has to share his information. *See id.* Defendants respond that if they "become aware of unlawful conduct, they cannot simply ignore it." Defs. Opp'n at 16. They also suggest that plaintiff should not be allowed to bring a lawsuit and ask for immunity in case discovery reveals unfavorable information. *See id.* at 19.

Although I cannot divine whether defendants will have cause to disclose plaintiff's information within the federal government, I cannot conclude that Judge Bloom clearly erred on the basis that defendants did not articulate sufficient reasons for including Paragraph 14 in the Protective Order. Contrary to plaintiff's assertions, there are laws that may require defendants to share certain information within DHS and with other federal agencies. *See id.* at 13–16. For example, the Homeland Security Act states that "[t]he Secretary [of Homeland Security] . . . shall work to ensure that intelligence or other information relating to terrorism to which the Department [of Homeland Security] has access is appropriately shared with the [relevant] elements of the Federal Government . . . as well as with State and local governments, as appropriate." 6 U.S.C. § 122(d)(2)). And the Intelligence Reform and Terrorism Protection Act states that "[t]he head of each department or agency that possesses or uses intelligence or terrorism information . . . or otherwise participates . . . in the [Information Sharing Environment[4]] shall . . . ensure full department or agency compliance with information sharing policies, procedures, guidelines, rules and standards . . . ." 6 U.S.C. § 485(i). Therefore, although I have no way of knowing if these laws will be

---

[4] The term "information sharing environment" is defined as "an approach that facilitates the sharing of terrorism and homeland security information." 6 U.S.C. § 485(a)(3).

relevant here, this is not a case where a government entity seeks access to information absent any statutory or common law basis. *Cf. U.S. v. Education Management*, 2013 WL 1568060, at *7. Nor is this a case where an agency tries to intervene in a lawsuit to bypass having to do its own discovery. *See Daniels v. City of New York*, 200 F.R.D. 205, 206 (S.D.N.Y. 2001)*; see also Massachusetts v. Mylan Laboratories, Inc.*, 246 F.R.D. 87, 91 (D. Mass. 2007) (refusing to modify a protective order where the purpose of modification would be to allow other states and the federal government to identify "possible claims against possible defendants").

At this point, this is also not a case where the government seeks to disclose information that has traditionally been treated as private, such as tax returns or health information. *Compare* Defs.' Opp'n at 16 (noting that plaintiff does not "explain how information that he provides about his marital history, travel history, or residential addresses is 'sensitive' or could be misused against him"), with *United States v. Univ. Hosp., Inc.*, 2006 WL 2612631, at *3 ("'[T]he government's broadly stated and ill-defined interests in health oversight and law enforcement do not, in the present case, outweigh the privacy concerns behind HIPAA and FERPA."), and *United States v. Epstein*, No. 96 CIV. 8307 (DC), 1998 WL 67676, at *1–2 (S.D.N.Y. Feb 19, 1998) (refusing to enter a protective order that allowed the intra-governmental sharing of the defendant's private tax information). Plaintiff's repeated characterization of his confidential information as "innocuous" notwithstanding, it is understandable that defendants cannot conclusively say whether these laws require them to share plaintiff's information before they know what the information will be.

Even if they are not required to disclose plaintiff's information, defendants argue that they should be allowed to share plaintiff's information as they would otherwise be "authorized to do by law." Defs.' Opp'n at 13. Implicit in this argument is that plaintiff should not be permitted to bring a lawsuit and then ask for immunity—or, more specifically, to bring a lawsuit and forbid defendants from acting on discovered information indicating criminality or affecting his citizenship application.

15

*See* Defs.' Opp'n at 16. Defendants assert that they are agencies "whose missions include law enforcement activities"—and, more specifically, responsibilities related to immigration. *Id.*

While courts are—and should be—sensitive to the gratuitous disclosure of information related to one's immigration status, *see, e.g.*, *Aguilar v. ICE*, No. 07 Civ. 8824 (JGK) (FM), 2009 WL 1789336, at *5 (S.D.N.Y Jun. 23, 2009), I cannot conclude that Judge Bloom clearly erred by including in the Protective Order a provision that allows her to adjudicate on a case-by-case basis whether defendants can disclose plaintiff's information as they "would otherwise be authorized to do by law." Paragraph 14. Plaintiff commenced this action. Like all potential civil litigants, he must contend with the risks of bringing a lawsuit and engaging in discovery—risks that, here, have been substantially mitigated by the procedure Judge Bloom outlined in Paragraph 14. *Cf. United States v. Certain Real Prop. & Premises Known as 4003-4005 5th Ave., Brooklyn, N.Y.*, 55 F.3d 78, 82 (2d Cir. 1995) ("Though constitutionally protected, a civil litigant's invocation of the privilege against self-incrimination during the discovery process is far from costless.").

If it becomes clear during discovery that defendants are using the Protective Order to harass plaintiff, the Protective Order should be modified. *See Dove*, 963 F.2d at 19. But, if defendants seek information that is relevant to the litigation and that *also* relates to plaintiff's naturalization application—which is a very big "if"— I cannot say that it would be unreasonable for Judge Bloom to allow defendants to consider the information or to share it within defendants' component entities.[5] *See Cipollone v. Liggett Group*, 113 F.R.D. 86, 91 (D.N.J. 1986) ("So long as the initial

---

[5] I am not persuaded by plaintiff's argument that Judge Bloom clearly erred because defendants have other means of obtaining information besides civil discovery. *See* Pl.'s Objs. at 12. If the information defendants seek is relevant to this litigation and also relates to plaintiff's naturalization application, plaintiff does not suffer a harm by virtue of DHS—a defendant—obtaining the information more efficiently than it otherwise would if it had sought the information through other means, such as immigration interviews. This situation is not analogous to one where a government entity that is not a party to the lawsuit and that might not otherwise come into possession of the information sought asks the court for access to discovery. *See, e.g.*, *Mylan*, 246 F.R.D. at 91.

16

litigation has not itself been instituted in bad faith for the purpose of obtaining documents for other actions, and so long as the interests of those represented in the initial litigation are being fully and ethically prosecuted, the Federal Rules do not foreclose the collaborative use of discovery."); *see also Saint-Jean v. Emigrant Mortg. Co.*, No. 11-CV-2122 (SJ) (RLM), 2015 WL 3797198, at *1 (E.D.N.Y. June 18, 2015) (finding that, on review, a court can only conclude that a lower court "abuses its discretion when its decision . . . cannot be located within the range of permissible decisions" (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir. 2010))). Plaintiff is not facing deportation, *see Aguilar*, 2009 WL 1789336, at *4–*5, or fending off a criminal prosecution, *see United States v. Hines*, 11-CV-05080 KAM) (MDG), 2012 WL 5182910, at *1 (E.D.N.Y. Oct. 17, 2012). He is actively seeking the privilege of citizenship, a process that allows—indeed, requires—the government to scrutinize plaintiff within legal bounds. Therefore, to the extent that Judge Bloom relied on defendants' arguments for including Paragraph 14 in the Protective Order, I cannot find that plaintiff has met his burden of showing clear error.

This finding should not be read as giving defendants *carte blanche* to share plaintiff's information based on some vague invocation of law-enforcement interests. In her discretion, Judge Bloom may prohibit defendants from disclosing plaintiff's information because the information does not truly implicate the laws on which defendants rely. She may also decide that, on balance, the possibility of the information's misuse outweighs the government's alleged need or desire to share it. Judge Bloom can—and, no doubt, will—carefully weigh each side's arguments as they pertain to specific pieces of information.

### C. Judge Bloom Did Not Clearly Err on the Ground that Her Order Entering the Protective Order Impermissibly Chilled Plaintiff's Ability to Vindicate His Constitutional Rights.

Plaintiff's final argument regarding clear error is that he should not have to "risk[] the government's use (and potentially, its pretextual misuse) of discovered information" to vindicate his

17

constitutional rights. Pl.'s Objs. at 15. If I allow the Protective Order to stand, plaintiff argues that he and others like him will be chilled from bringing similar lawsuits. *See id.* at 9, 17, 19. Defendants, on the other hand, contend that "despite all of his rhetoric about wanting to vindicate his constitutional rights," plaintiff is the one who "derailed discovery." Defs.' Opp'n at 19.

Plaintiff makes an important argument about the delicate balance courts must strike between the need for public discovery and the need to protect a litigant's privacy. But it is impossible to strike the right balance when the scales are empty: neither Judge Bloom nor I know the substance of the information plaintiff seeks to protect from allegedly discriminatory government action. We also do not know what need(s) defendants will assert for its dissemination. What presently exists is a procedure to make future determinations, and plaintiff has not explained how the existence of this procedure alone will chill others from bringing lawsuits to vindicate their constitutional rights. Therefore, plaintiff has not shown that Judge Bloom's order was clearly erroneous on the ground that it impermissibly chilled plaintiff's ability to vindicate his constitutional rights.

## II. Judge Bloom's Order Is Not Contrary to Law.

Plaintiff also argues that the Protective Order is contrary to law because it "impermissibly forces [him] to meet a heightened and undefined standard to protect his confidential information." Pl.'s Objs. at 21. Plaintiff further argues that, under the Protective Order, he must prove his case for confidentiality twice: first by meeting the good cause standard required by Federal Rule of Civil Procedure 26 to protect information from disclosure to the public and then again when he asks the Court to prohibit defendants from sharing his information within the federal government. *See id.* at 22–23. In response, Defendants contend that Judge Bloom did not violate any controlling law and that, in practice, plaintiff would have to meet the standard for preventing disclosure of confidential information only once. Defs.' Opp'n at 20.

18

Plaintiff has not proven that the Protective Order is contrary to law. As plaintiff is aware, Judge Bloom has not indicated what standard she will apply to an application plaintiff makes pursuant to Paragraph 14, so it is premature to argue that it will somehow be heightened. In fact, plaintiff cannot show that Judge Bloom will not apply the good cause standard articulated in Federal Rule of Civil Procedure 26, which plaintiff concedes that he must meet regardless in order to keep his information confidential from the public. As discussed earlier, it seems unlikely that defendants will object to plaintiff's initial designation of his information as confidential; neither party has suggested that it wishes to prevent the other from keeping information confidential from the public. They appear to dispute only whether defendants can share plaintiff's information within the federal government. Therefore, if plaintiff does not have to make an actual showing of good cause to the court in the first instance—above and beyond unilaterally stamping his papers "confidential"—Judge Bloom may very well use the good cause standard when assessing an application that plaintiff makes under Paragraph 14. This would mean that plaintiff would have to meet the standard for preventing disclosure of his confidential information only once. In any event, it is currently impossible to know what the defendants or Judge Bloom will do, and I cannot conclude that Judge Bloom failed to apply or misapplied controlling authority when she has not yet been asked to rule.

Finally, it is neither illegal nor illogical for Judge Bloom to wait until she has specific information to determine the correct standard for resolving these discovery disputes. Only when she better understands the values that she needs to balance in specific instances—what harm(s) plaintiff may face if certain information is disclosed and what need(s) defendants have for disclosing that information—can she determine what the appropriate standard should be. As defendants note, "[t]here is no requirement (in controlling law or elsewhere) that the legal standards that the court will apply to a hypothetical future application for a protective order regarding specific information be set

forth in an order." Defs.' Opp'n at 20–21. Therefore, plaintiff has failed to show that Judge Bloom's order entering the Protective Order was contrary to law.

## CONCLUSION

For the foregoing reasons, I affirm Judge Bloom's December 1 order entering a Protective Order and overrule plaintiff's objections. The parties are directed to proceed with discovery.

_____/s/_____
Allyne R. Ross
United States District Judge

Dated:      February 7, 2018
            Brooklyn, New York